UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES EDWARD BUCHAN,

    Petitioner,

                                              Case No. 08-12957

v.

                                              Honorable Patrick J. Duggan

DEBRA SCUTT,

    Respondent.
                                          /

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Charles Edward Buchan ("Petitioner"), a state prisoner currently confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for one count of first-degree criminal sexual conduct, Michigan Compiled Laws § 750.520b(1)(a), and two counts of second-degree criminal sexual conduct, Michigan Compiled Laws § 750.520c(1)(a). For the reasons stated below, the petition for writ of habeas corpus is denied, and the Court declines to issue a certificate of appealability.

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Kent County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1):

> Complainant, who was 14 years old at the time of trial, testified that, when she was ten or eleven years old, she was watching television at the home of defendant, then a friend of the family, when defendant started "touching" her on her "private parts." Complainant agreed that by "private parts" she meant "breast area" and "vaginal area." Complainant continued that she asked defendant to stop, but that he persisted. Complainant continued that defendant ordered her to disrobe, then did so angrily when she resisted, causing her to comply out of fear. Complainant testified that defendant again touched her vaginal and breast areas with his hand. Asked if defendant ever licked her, complainant answered in the affirmative; asked where, complainant specified "[m]y vaginal area." Complainant added that defendant admonished her not to tell anyone of what had happened.

*People v. Buchan,* No. 273904, slip op. at 1 (Mich. Ct. App. Dec. 4, 2007).

Petitioner's convictions were affirmed on appeal. *Id., lv. den.* 480 Mich. 1139, 746 N.W.2d 90 (Mich. 2008). On July 10, 2008, Petitioner filed a petition for a writ of habeas corpus on the following grounds:

> I. Petitioner's 5th and 14th Amendment rights to a fair trial and due process of law under the United States Constitution were violated when the prosecutor committed misconduct by leading the complainant to provide incriminating testimony, eliciting irrelevant, prejudicial testimony from other witnesses and arguing facts not in evidence.
>
> II. Petitioner was denied his 6th Amendment right to effective assistance of trial counsel and 14th Amendment right to due process of law under the United States Constitution where trial counsel was appointed by the court to represent Petitioner, however he charged Petitioner a fee of $16,000 for his service, and failed to object.
>
> III. Petitioner's 5th and 14th Amendment rights of due process of law under the United States Constitution were violated where the prosecution failed to prove the element of penetration with respect to the charge of criminal sexual conduct first degree.

## II. Discussion

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under § 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). "[R]un-of-the-mill state-court decision[s]" applying the correct legal rule would not fit comfortably within the "contrary to" clause, and should instead be reviewed under the "unreasonable application" language. *Id.* at 406, 120 S. Ct. at 1520. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409, 120 S. Ct. at 1521. The Court may not issue the writ "simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411,

120 S. Ct. at 1522.

## B. Prosecutorial Misconduct Claims

Respondent contends that Petitioner's prosecutorial misconduct claims are procedurally defaulted, as counsel failed to preserve them via objection. Petitioner argues that counsel was ineffective for failing to object to these instances of misconduct. *See* Claim II, *infra*. Counsel's ineffectiveness in failing to preserve a claim for review may establish cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000). The cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of the defaulted claims; it is therefore easier to simply consider Petitioner's claims on their merits. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 947 (1982). On habeas review, a court's role is to determine whether the conduct was "so egregious as to render the entire trial fundamentally unfair." *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993). The Court must initially decide whether the prosecutor's challenged statements were improper. *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). If the statements were improper, the Court must then determine whether they were so flagrant as to constitute a denial of due process and warrant reversal. *Id.* The Court must consider (1) the degree to which the challenged remarks had a tendency to mislead the jury and prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or

4

accidentally placed before the jury; and (4) the strength of the competent proof against the accused. *Serra*, 4 F.3d at 1355-56.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). "The Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S. Ct. 1868, 1872 (1974)).

Petitioner first claims that the prosecutor improperly asked leading questions to the victim, citing the following exchange:

Q: Can you tell . . . me and tell the jury where was he touching you?

A: On my private parts.

Q: And private parts above your waist?

A: Yes.

Q: And breast area?

A: Yes.

Q: Was he touching you there?

A: Yes.

Q: Do you have private parts below your waist?

A: Yes.

Q: Vaginal area?

A: Yes.

Q: Was he touching you there?

A: Yes.

* * *

Q: Did he do anything beside[s] touch you with his hand?

A: Yes - I don't remember. Yeah.

Q: Did he ever lick you?

A: Yes.

Q: And describe where he licked you[.]

A: My vaginal area.

In rejecting Petitioner's claim, the Michigan Court of Appeals noted that the prosecutor was "was working with a witness who was both of tender years, and was being asked to describe a painfully personal experience." *Buchan*, slip op. at 3. The Michigan Court of Appeals opined that had there been an objection to this questioning, "it would have been proper for the trial court to allow the prosecutor to ask leading questions to the extent that they were necessary to develop the witness' testimony." *Id.* The Michigan Court of Appeals concluded that the prosecutor's use of leading questions did not constitute prosecutorial misconduct. *Id.*

Michigan Rule of Evidence 611(c)(1) states: "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." Petitioner's claim that the prosecutor was allowed to ask the victim leading questions relates to a state rule of evidence, and federal habeas review of state court

6

evidentiary rulings is extremely limited.  *See Jordan v. Hurley,* 397 F.3d 360, 362 (6th Cir. 2005).  In any event, federal courts have ruled "that leading questions on direct examination are permissible in questioning certain witnesses, including a child sexual abuse victim, a foreign witness testifying through a translator, an unusually soft-spoken and frightened witness, and a mentally retarded adult who was the victim of sexual abuse." *Id.* at 363.  Because the victim was fourteen years old and was testifying about a personal experience of being sexually assaulted, the prosecutor did not commit misconduct by asking her leading questions.

Petitioner next contends that the prosecutor asked several defense witnesses irrelevant and prejudicial questions.  The three defense witnesses had all testified that they had seen petitioner with the victim and other children and that they had never witnessed any problems.  On cross-examination, the prosecutor asked the witnesses to acknowledge that they had not had the opportunity to sit through the trial and listen to the witnesses testify.  The Michigan Court of Appeals rejected Petitioner's claim, finding that this question "was a reasonable way of bringing to the jury's attention that this witness's opinion was not necessarily based on all the facts." *Buchan,* slip op. at 3.  The prosecutor also asked two of the witnesses whether they were familiar with the dynamics of sexually abused children, but the Michigan Court of Appeals concluded: "[W]e do not regard a prosecuting attorney's posing of a question intended to remind the jurors that they are hearing from a lay witness, not an expert in such matters, as misconduct." *Id.*

The Sixth Circuit has noted that there is no Supreme Court authority for the proposition that a prosecutor's questions that simply call for answers that are inadmissible

7

due to relevancy constitute misconduct rising to the level of a federal due process violation. *Wade v. White,* 120 Fed. Appx. 591, 594 (6th Cir. 2005). Therefore, the fact that the prosecutor may have attempted to elicit irrelevant evidence from these witnesses would not entitle Petitioner to habeas relief.

More importantly, the prosecutor's questions were relevant to challenging the witnesses' qualifications to determine the significance of the victim's demeanor around Petitioner. A prosecutor does not commit misconduct by asking witnesses relevant questions. *See Slagle*, 457 F.3d at 518. Because the questions were relevant to challenging the witnesses' assessment of the relationship between the victim and Petitioner, the questions did not deprive petitioner of a fair trial.

Petitioner complains that the prosecutor committed misconduct during closing argument by stating that Petitioner had given the victim a cell phone and said, "now, little girl, I can get a hold of you any time I want," because there was no evidence that Petitioner made this statement. In rejecting Petitioner's claim, the Michigan Court of Appeals noted that the victim's mother had testified that Petitioner had given the victim a cell phone and had then opined that by doing so, Petitioner was essentially saying, "[t]he cell phone was, here, little girl, now I can get a hold of you any time I want." *Buchan*, slip op. at 3. The Michigan Court of Appeals concluded that the prosecutor's argument fell "under the rubric of reasonable inferences arising from matters in evidence." *Id.* at 4. The court concluded that, when considered in context, "the statement plainly attributed words [to Petitioner] only in the same figurative way the victim's mother had done so, not as an actual quotation. Contrary to defendant's assertions, there was no prosecutorial

8

misconduct." *Id.*

A prosecutor's misrepresentation of facts in evidence can amount to substantial error because it "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000) (quoting *Donnelly*, 416 U.S. at 646, 94 S. Ct. at 1873). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). Prosecutors, however, "must be given leeway to argue reasonable inferences from the evidence." *Id.* (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)).

The prosecutor did not misrepresent the evidence or argue facts not introduced into evidence, but merely argued reasonable inferences from the evidence. The victim's mother testified that Petitioner had given the victim a cell phone and then had offered her own opinion that Petitioner did so in order to have easy access to the victim. The prosecutor's remarks, when viewed in context, were not meant to suggest that Petitioner had actually made this statement, but were only a figurative way of suggesting that Petitioner gave the phone to the victim so that he could telephone her. *See Abela v. Martin,* 380 F. 3d 915, 929-30 (6th Cir. 2004) (prosecutor's presentation during closing argument of hypothetical conversation between defendant and his friend did not constitute reversible misconduct where prosecutor prefaced his argument by advising jury that they would probably never know exactly what was said, and jury instructions stated that counsel's arguments were not evidence). Because the prosecutor's remarks were only a

9

small part of an argument that focused heavily on summarizing the evidence, and the judge informed the jury that the arguments were not evidence, habeas relief is unwarranted.

**C. Ineffective Assistance of Counsel Claims**

Petitioner next contends that he was deprived of the effective assistance of counsel. To show that he was denied the effective assistance of counsel, a defendant must satisfy a two-prong test. First, he must demonstrate that counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In so doing, the defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 698, 104 S. Ct. at 2065. Second, a defendant must show that counsel's deficient performance prejudiced his defense. *Id*. at 687, 104 S. Ct. at 2064. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068.

Petitioner argues that he is entitled to reversal of his conviction because his attorney labored under a conflict of interest. Petitioner claims that his defense counsel was appointed by the Kent County Circuit Court, but subsequently charged him $16,000 for his services. Petitioner asserts that this created a conflict of interest, as counsel feared that Petitioner would report this improper fee to either the circuit court or the Attorney Grievance Commission. Petitioner concludes that counsel therefore compromised his duty of zealous representation. He argues that prejudice should be presumed, requiring automatic reversal of his convictions.

The Supreme Court has recognized that in certain circumstances, prejudice is presumed. *Id.* at 692, 104 S. Ct. at 2067. "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice," as are "various kinds of state interference with counsel's assistance." *Id.* A defendant also enjoys a presumption of prejudice where "an actual conflict of interest adversely affected his lawyer's performance." *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 349-50, 100 S. Ct. 1708, 1719 (1980)). *Sullivan* addressed an attorney's concurrent representation of joint criminal defendants, and the Supreme Court has openly questioned whether *Sullivan*'s presumption of prejudice should apply to other conflicts of interest. *Mickens v. Taylor*, 535 U.S. 162, 176, 122 S. Ct. 1237, 1246 (2002). The Sixth Circuit has indicated a reluctance to apply *Sullivan* to conflicts of interest that do not involve joint representation. *Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir. 2006) ("This Court has consistently held that, for § 2254 cases, the *Sullivan* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland* standard applies."). Petitioner's alleged conflict of interest did not result from the concurrent representation of joint criminal defendants. *Sullivan* is inapplicable, and *Strickland* requires Petitioner to show that he was prejudiced by counsel's alleged conflict of interest.

Petitioner asserts that counsel was ineffective for failing to investigate several witnesses that would have established his innocence. It is unclear whether Petitioner exhausted this particular claim in state court, but the claim lacks merit, and the interests of comity and federalism would be best served by addressing it rather than dismissing the

11

entire habeas petition for failure to exhaust state remedies. *See Sanders v. McKee,* 276 F. Supp. 2d 691, 694 (E.D. Mich. 2003). As Respondent notes, Petitioner has failed to present the names of these witnesses or offer proof of the content of their testimony and how it would have affected the outcome of the trial. Petitioner has also failed to attach any affidavits sworn by the proposed witnesses or evidence as to whether they would have been able to testify. Absent such proof, Petitioner cannot establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the second prong of his ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007). Conclusory allegations of ineffective assistance of counsel lacking evidentiary support do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).

Petitioner next argues that counsel was ineffective for failing to object to the prosecutorial misconduct that he complained of in Claim I, *supra.* To show prejudice for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged failure of his counsel to object, there is a reasonable probability that the outcome of the proceeding would have been different. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001). Because the prosecutor's conduct was not improper, counsel was not ineffective for failing to object.

Petitioner contends that his trial counsel was ineffective for failing to move for a mistrial when a detective testified that he and Petitioner discussed a polygraph. In rejecting this claim, the Michigan Court of Appeals noted that the detective made "only a single volunteered mention of a polygraph test," which was "brief, inadvertent, and

12

isolated." *Buchan*, slip op. at 5. This reference did not imply that Petitioner took a polygraph test or what the results of that test were. *Id.* The Michigan Court of Appeals concluded: "[W]e are confident that had defense counsel moved the court for a mistrial, the court would properly have denied the motion. Counsel is 'not required to argue a frivolous or meritless motion.'" *Id.* (internal citation omitted). Counsel's failure to make a frivolous motion for mistrial cannot be considered deficient performance. Because the Michigan Court of Appeals concluded that there was no basis for moving for a mistrial in this case, counsel was not ineffective for failing to do so.

**D. Sufficiency of Evidence Claim**

Petitioner argues that there was insufficient evidence of penetration to support his conviction for first-degree criminal sexual conduct. In rejecting Petitioner's claim, the Michigan Court of Appeals ruled:

> Defendant acknowledges that complainant testified that he had licked her "vaginal area," but argues that this was not sufficiently specific to indicate actual oral-genital contact. However, although there were several references to the "vaginal area" in this regard (Tr I, 93), complainant responded affirmatively to questioning that referred less ambiguously to the vagina:
>
> Q: [H]ere on the witness stand you weren't sure if the defendant put his tongue on your vagina?
>
> A: Yes.
>
> * * *
>
> Q: [I]s it easy to discuss the defendant putting his mouth on your vagina?
>
> A: No.
>
> If the references to the "vaginal area" left some doubt whether actual oral-genital contact had occurred, this was clarified by the subsequent testimony given in connection specifically with the "vagina." For these

13

reasons, defendant's challenge to the sufficiency of the evidence must fail." *Buchan,* slip op. at 5-6.

"A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)). The Court must view this standard through the framework of § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The Court must refer to "the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16; 99 S. Ct. at 2792. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).

Under Michigan law, first-degree criminal sexual conduct is committed when there is an intrusion into the genital or anal opening of another person under one of the enumerated circumstances set forth in the first-degree criminal sexual conduct statute. *People v. Garrow*, 99 Mich. App. 834, 837-38, 298 N.W.2d 627 (Mich. Ct. App. 1980). Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." Michigan Compiled Laws § 750.520a(r). Under Michigan law, an act of cunnilingus is considered to be sexual penetration even where the oral contact does not include actual invasion of the vaginal cavity. *See People v. Legg*, 197 Mich. App. 131,

133, 494 N.W.2d 797, 798 (Mich. Ct. App. 1992).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that Petitioner engaged in sufficient oral-genital contact with the victim in order to find him guilty of first-degree criminal sexual conduct. Although there were several references to the "vaginal area," the victim responded affirmatively to questions concerning Petitioner's placement of his mouth or tongue on the victim's vagina. Petitioner is not entitled to habeas relief, because the Michigan Court of Appeals made a reasonable determination that a rational trier of fact could have found the elements of first-degree criminal sexual conduct, and specifically, the element of penetration, beyond a reasonable doubt.

**E. Certificate of Appealability**

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Cases. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003). For the reasons stated above, the Court finds that Petitioner has failed to make a substantial showing of the denial of a constitutional right. The Court therefore declines to issue Petitioner a certificate of appealability.

### III. Conclusion

For the reasons stated above, Petitioner's application for a writ of habeas corpus is denied, and a certificate of appealability shall not issue. A judgment consistent with this Opinion and Order shall issue.

Accordingly,

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED**;

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue Petitioner a certificate of appealability.


                                          s/PATRICK J. DUGGAN
                                          UNITED STATES DISTRICT JUDGE

Copies to:

Laura A. Cook, A.A.G.

Charles Edward Buchan  #437986
G. Robert Cotton Correctional Facility
3500 N. Elm Road
Jackson, MI 49201